# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| NICOLOSI DISTRIBUTING, INC., <br> Plaintiff, <br> v. <br> FINISHMASTER, INC., et al., <br> Defendants. | Case No. 18-cv-03587-BLF <br><br> **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION; GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** <br><br> [Re: ECF 22, 28] |

Plaintiff Nicolosi Distributing, Inc. ("Nicolosi") is a small distributor of automotive paints in the San Francisco Bay Area. In this action, it accuses Defendants FinishMaster, Inc. and Uni-Select, Inc. (collectively, "Defendants") of various antitrust violations resulting from FinishMaster, Inc.'s alleged use of exclusive dealing contracts and its acquisition of smaller competitor-distributors. Presently before the Court is Nicolosi's motion for preliminary injunction, P.I. Mot., ECF 28, and Defendants' motion to dismiss for failure to state a claim and for lack of personal jurisdiction as to Uni-Select, Inc., Mot. Dis., ECF 22. The Court held a hearing on the preliminary injunction motion on September 20, 2018. At the hearing, the Court denied Plaintiff's motion for preliminary injunction and granted Defendant's motion to dismiss with leave to amend. For the reasons stated on the record and as set forth below, the motion for preliminary injunction is DENIED and the motion to dismiss is GRANTED WITH LEAVE TO AMEND.

## I. BACKGROUND

Nicolosi Distributing, Inc. ("Nicolosi") is a small distributor of automotive paints and supplies that sells to autobody shops in the San Francisco Bay Area. Compl. ¶¶ 26, 35, ECF 1. Nicolosi directly competes with Defendant FinishMaster, Inc. ("FinishMaster"). *Id.* FinishMaster

is a large automotive paint and supplies distributor with a principal place of business in Indiana. *Id.* ¶¶ 27, 36. It had revenues of approximately $618.8 million as of April 2016. *Id.* ¶ 37. FinishMaster is a wholly owned subsidiary of Defendant Uni-Select, Inc. ("Uni-Select"), a Canadian company. *Id.* ¶¶ 8, 28–31.

Nicolosi includes many allegations aimed at defining the relevant market for its antitrust claims. Geographically, the market is the nine-county San Francisco Bay Area. *See, e.g.*, *id.* ¶ 55. The relevant purchasers are A-list body shops who purchase automotive paint. A-list body shops are defined as having ten years' experience in the business, being certified by one or more car manufacturers, being sponsored by one or more car dealers, and having a high level of craftsmanship. *Id.* ¶ 83. Nicolosi distinguishes such shops from B-list shops, which are not certified or sponsored but have a high level of craftsmanship, and C-list shops, which are local, family-run shops. *Id.* ¶¶ 84–85. A-list shops are typically connected to automobile dealerships, and include those shops owned by dealerships, as well as independent shops certified by dealerships, chain-store autobody shops, and super-large autobody shops. *Id.* ¶ 2. Nicolosi alleges that there are 800 automobile dealerships in the Bay Area. *Id.* ¶ 111. At other times in the Complaint, Nicolosi references B-list shops as part of the relevant sub-market, *see, e.g.*, *id.* ¶¶ 55, 91, but at the hearing Nicolosi's counsel focused exclusively on the "sub-market" of A-list body shops.

The Complaint lists seven paint distributors who might target this A-list, Bay Area market, including Nicolosi and FinishMaster. *Id.* ¶ 15. And it notes that nationally there are three major distributors of automotive paint, including FinishMaster, and that the rest of the market is filled by independent distributors like Nicolosi. *Id.* ¶¶ 51, 53. Nicolosi also includes allegations that A-list body shops can purchase directly from manufacturers. *Id.* ¶ 82.

The Complaint also appears to allege that the actual brand of paint is an additional limitation on the market; this understanding was largely confirmed by Nicolosi's counsel at the hearing. There are five major paint manufacturers, including Axalta and BASF. *Id.* ¶¶ 14, 59. Nicolosi's Complaint describes Nicolosi as a "sole supplier of Axalta paint products" and elsewhere notes that FinishMaster sells Axalta, seemingly implying that it sells Axalta only. *See*

2

*id.* ¶¶ 71, 112. It also notes that many dealerships use one of the non-Axalta brands of paint. *Id.* ¶ 111.

As to Defendants' allegedly unlawful conduct, Nicolosi first describes how FinishMaster has acquired several smaller paint distributors over the past several years. *Id.* ¶¶ 3, 4, 16–18. According to Nicolosi, FinishMaster purchases these smaller distributors in an effort to eliminate competition in the market. *Id.* ¶ 35; *see, e.g.*, *id.* ¶¶ 46–50. After purchasing these competitors, FinishMaster allegedly forces the previous owners to retire and then shuts down the stores. *Id.* ¶¶ 39–43. Nicolosi alleges that Uni-Select encourages and supports this strategy. *Id.* ¶ 44.

Nicolosi next alleges that FinishMaster enters into agreements in restraint of trade and uses its market power to give customer-loyalty discounts (or "conditional pricing") that unreasonably restrain trade. *Id.* ¶ 32. Specifically, Nicolosi alleges that FinishMaster enters into exclusive supply contracts with A-list body shops whereby FinishMaster provides six-figure, up-front payments and steep price discounts to the shop in exchange for loyalty agreements by which the shops purchase paint from FinishMaster exclusively. *Id.* ¶ 55; *see, e.g.*, *id.* ¶¶ 65–70. This exclusive contract, in combination with the reduced competition created by FinishMaster's purchasing of smaller distributors, allegedly has allowed FinishMaster to gain a "near monopoloy" in the A-list autobody shop market. *Id.* ¶¶ 55, 87. Nicolosi alleges that Uni-Select knowingly funds these activities. *Id.* ¶¶ 8, 28–32.

Nicolosi does not specifically allege the size of FinishMaster's market share, but it claims that FinishMaster has obtained market power in the market of A- and B-list autobody shops in the nine-county San Francisco Bay Area. *Id.* ¶ 55. It also alleges that the smaller distributors in the market account for approximately two-thirds of sales in the market. *Id.* ¶¶ 55, 86. Elsewhere, Nicolosi alleges that FinishMaster has the A- and B-list shops "essentially sewn up," and that two-thirds of the market comes from the B- and C-list shops. *Id.* ¶ 91. Given its smaller size, Nicolosi is not able to offer similar deals to A-list body shops, and thus is excluded from the sub-market. *Id.* ¶¶ 74–80. Nicolosi also alleges in passing that FinishMaster unlawfully ties paint to nonpaint products in its exclusive dealing contracts, but it apparently does not base its claims on this allegation. *Id.* ¶¶ 94, 99–100. It does not allege that these agreements lead to higher prices for the

3

consumer or that the agreements involve predatory pricing.

Finally, Nicolosi alleges that FinishMaster is liable for monopolization of the A-list body shop sub-market and attempted monopolization of the B-list body shop sub-market, and that Uni-Select is liable for aiding and abetting this alleged misconduct. *Id.* ¶ 117. This claim is based in part on FinishMaster's purchasing of smaller distributors. *See id.* ¶¶ 133–38. According to Nicolosi, FinishMaster is exploiting its monopoly power to make offers that "no one out [there] selling Axalta products" can match. *Id.* ¶ 138. The only specific number Nicolosi provides related to the alleged size of FinishMaster's market share is the estimate that two-thirds of the market is occupied by smaller distributors. Nicolosi does not allege the market share for larger distributors generally, or for FinishMaster specifically.

Nicolosi claims that FinishMaster's actions have damaged its ability to compete. *Id.* ¶¶ 101–10. As such, Nicolosi brings the present action, asserting the following causes of action: (1) violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, for entering into agreements in restraint of trade; (2) violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, for unlawful monopolization and/or attempted monopolization; (3) violation of the Cartwright Act, California Bus. & Prof. Code §§ 16720, 16726; and (4) violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

## II. LEGAL STANDARD

### A. Motion to Dismiss

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed

4

factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

If the Court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### B. Preliminary Injunction

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The plaintiff bears the burden of making a clear showing on these elements and on entitlement to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

### III. DISCUSSION

After reviewing the relevant briefing and hearing argument on the record, the Court finds that Nicolosi has failed to (1) state a claim for any of its four causes of action; (2) demonstrate that this Court has personal jurisdiction over Uni-Select; and (3) demonstrate likelihood of success on the merits, a necessary element for issuing a preliminary injunction. Nicolosi's state law claims

5

are based on the same underlying actions as its federal antitrust claims, and thus its state law claims rise or fall with its federal claims. *See Eastman v. Quest Diagnostics Inc.,* 724 F. App'x 556, 559 n.2 (9th Cir. 2018). As such, the Court analyzes Nicolosi's two federal causes of action, followed by the issue of personal jurisdiction over Uni-Select.

### A. Sherman Act Section 1

To state a claim under Section 1 of the Sherman Act, a plaintiff must plead "evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). At issue here are FinishMaster's alleged exclusive dealing contracts. Such contracts have "well-recognized economic benefits" and are analyzed under the rule of reason. *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997). "The main antitrust objection to exclusive dealing is its tendency to 'foreclose' existing competitors or new entrants from competition in the covered portion of the relevant market during the term of the agreement." *Id.* As such, "[u]nder the antitrust rule of reason, an exclusive dealing arrangement violates Section 1 only if its effect is to 'foreclose competition in a substantial share of the line of commerce affected.'" *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010) (quoting *Omega*, 127 F.3d at 1162).

Nicolosi fails to demonstrate that FinishMaster has sufficiently foreclosed competition in a substantial share of the line of commerce affected for several reasons.

First, it fails to provide sufficient evidence to support its definition of the relevant market—*i.e.*, "the line of commerce affected." Nicolosi defines the market as Bay Area A-list body shops seemingly who purchase Axalta paint. But its allegations do not support any of these three limitations. There are no allegations demonstrating that the nine-county Bay Area is the appropriate geographical region. Nicolosi does not allege that customer-shops do not and cannot purchase their paint from distributors or manufacturers in other parts of the country. *See Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir. 1991) (defining

6

geographic market as "area of effective competition where buyers can turn for alternate sources of supply" (alteration omitted and citation omitted)). Likewise, the Bay Area's nine counties cover much area, and there is no evidence as to why that geographic market is not too *broad*.

As to the customer market, Nicolosi focuses on A-list body shops, but the crux of the relevant market inquiry is on the *products* sold, not on the type of customer. *See Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008). That is, the focus here is on which customers could purchase paint from Nicolosi and FinishMaster. Nicolosi's allegations do not distinguish the A-list body shops from B- and C-list shops in terms of their ability or desire to purchase paint from Nicolosi and FinishMaster. But if B- and C-list consumers can purchase the product from Nicolosi and FinishMaster, they should not be excluded from the relevant market.

And finally, "the market must encompass the product at issue as well as all economic substitutes for the product." *Id.* Here, Nicolosi appears to claim the market should be limited only to Axalta paint. But Nicolosi's counsel made clear at the hearing that the major paint brands are functionally identical. As such, Nicolosi will need to allege sufficient facts to demonstrate that it is appropriate to exclude from the relevant market these seemingly interchangeable substitutes.

Second, Nicolosi does not plausibly allege that FinishMaster has foreclosed a "substantial share" of the market. Courts have quantified substantial share as "40% to 50% of the relevant market." *See Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1029–30 & n.8 (N.D. Cal. 2015) (citing *United States v. Microsoft Corp.*, 253 F.3d 34, 70 (D.C. Cir. 2001)). Nicolosi's allegations make clear that independent distributors have captured two-thirds of the market. Compl. ¶¶ 55, 86. As to the remaining 33%, Nicolosi does not allege that FinishMaster has captured even this percentage of the market—instead, it alleges that several other major distributors exist, and it notes that manufacturers themselves can sell directly to consumers, further expanding the market size. *Id.* ¶¶ 51, 81–82. As such, Nicolosi has not sufficiently alleged that FinishMaster has foreclosed competition in a substantial portion of the market.

Third, Nicolosi fails to allege that FinishMaster's alleged activities have any anti-competitive effects in the market. Nicolosi must sufficiently allege "an injury to competition" by identifying a contract with some anticompetitive effect. *Brantley v. NBC Universal*, 675 F.3d

7

1192, 1198 (9th Cir. 2012). Nicolosi has not alleged any such anti-competitive effects, such as by showing reduced economic output in the market or increased prices for consumers. *See Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989). Without more, Nicolosi does not sufficiently allege that FinishMaster's alleged activities have anti-competitive effects, as would be required for those actions to be unlawful under the rule of reason.

Given these failures, the Court DISMISSES WITH LEAVE TO AMEND Nicolosi's Sherman Act Section 1 cause of action. Failure to plausibly allege a claim can bar a finding of likelihood of success on the merits in the preliminary injunction inquiry. *Doe v. Fed. Dist. Court*, 467 F. App'x 725, 728 (9th Cir. 2012) ("Because Doe's complaint was insufficient to survive a motion to dismiss for failure to state a claim, she could not show a strong likelihood of success on the merits."); *see also Wills v. Tilton*, No. CV08-1413 JLS, 2009 WL 1357459, at *2 (E.D. Cal. May 13, 2009). Nicolosi's evidence submitted in support of its preliminary injunction motion does not cure these deficiencies. In support of its market definition, Nicolosi points only to a firsthand account of the market by its owner and a description of the "peninsula" market by another distributor who has been selling in the market for many years. As stated on the record, this type of evidence and the scope of the evidence presented here is not sufficient to establish the relevant market, and thus to cure Nicolosi's inability to demonstrate likelihood of success on the merits. As such, the Court DENIES Nicolosi's preliminary injunction motion as to this claim.

**B.  Sherman Act Section 2**

Section 2 of the Sherman Act makes it unlawful to 'monopolize, or attempt to monopolize, . . . any part of the trade or commerce among the several States." 15 U.S.C. § 2. Monopolization has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Eastman*, 724 F. App'x at 557 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)). Attempted monopolization has three elements: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883,

8

893 (9th Cir. 2008) (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993)).

Nicolosi's Section 2 claim fails for the same reasons as its Section 1 claim. Nicolosi does not adequately define the relevant market, and it does not allege what percentage of that market FinishMaster has captured. At most it alleges that FinishMaster has somewhere around 33% market share, but "a market share of less than 50 percent is presumptively insufficient to establish market power" for an actual monopolization claim. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir. 1995). And for an attempted monopolization claim, "most cases hold that a market share of 30 percent is presumptively insufficient to establish the power to control price." *Id.* Nicolosi's actual monopolization claim thus fails even on this extremely generous reading of the Complaint, and its attempted monopolization claim is right on the border of plausibility. What's more, the allegations as to both claims are insufficient because they do not "plead facts sufficient to support the inference that the exclusive dealing arrangements have some appreciable impact on the market"—that is, that they have an anti-competitive effect on competition. *Eastman*, 724 F. App'x at 558. As with its Section 1 claim, Nicolosi's additional evidence does not cure these deficiencies.

Thus, Nicolosi fails to state a claim and prove likelihood of success on the merits for its Sherman Act Section 2 claim. The Court DISMISSES WITH LEAVE TO AMEND Nicolosi's Sherman Act Section 2 cause of action and DENIES Nicolosi's preliminary injunction motion as to this claim. Because the Court dismisses both of Nicolosi's federal law claim, it also DISMISSES WITH LEAVE TO AMEND Nicolosi's identical state law claims.

### C. Personal Jurisdiction Over Uni-Select

Defendant Uni-Select also argues that it is not subject to personal jurisdiction in this Court. On the present allegations, this Court clearly does not have general jurisdiction over Uni-Select. "General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state are so constant and pervasive as to 'render it essentially at home' in the state." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). Nicolosi does not allege that Uni-Select is incorporated in California or that its principal place of business is here. And to the extent Nicolosi relies on

9

FinishMaster's contacts with the state as Uni-Select's subsidiary, FinishMaster also cannot be said to be at home here, since it is an Indiana corporation with its principal place of business in that state. *See* Compl. ¶ 27.

As to specific jurisdiction, specific jurisdiction exists "only when three requirements are satisfied: (1) the defendant either purposefully directs its activities or purposefully avails itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, *i.e.*, it is reasonable." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (alterations and internal quotation marks omitted). Under Ninth Circuit case law, "[t]he existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015). That said, a parent can be subject to personal jurisdiction based on the actions of its subsidiary where the subsidiary is merely an "alter ego" of the parent. *See id.* But Nicolosi does not plausibly allege that Uni-Select has the necessary level of "pervasive control" over FinishMaster, such as "dictat[ing] every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id.* at 1073.

To the extent Nicolosi attempts to allege personal jurisdiction based on *Uni-Select's* actions here, namely its purposeful provision of funds directly to FinishMaster, Nicolosi has not plausibly alleged that any such payments were directed to California. Because FinishMaster operates throughout the country, *see* Compl. ¶ 27, Uni-Select's alleged provision of funds for FinishMaster to purchase other distributors and to enter into exclusive dealing contracts is not alone sufficient to demonstrate that Uni-Select purposefully availed itself of doing business in California. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011).

Thus, the Court holds that Nicolosi's Complaint fails to plausibly allege that this Court has personal jurisdiction over Defendant Uni-Select. The Court thus DISMISSES WITH LEAVE TO AMEND.

## IV. ORDER

For the foregoing reasons and those stated on the record at the hearing on the preliminary injunction motion, Nicolosi's motion for preliminary injunction is DENIED, and Defendants' motion to dismiss for failure to state a claim and for lack of personal jurisdiction as to Defendant Uni-Select is GRANTED WITH LEAVE TO AMEND. Nicolosi's amended complaint is due sixty days from the date of the hearing, which is **on or before November 19, 2018.**

**IT IS SO ORDERED.**

Dated: October 9, 2018

BETH LABSON FREEMAN
United States District Judge