UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICOLOSI DISTRIBUTING, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FINISHMASTER, INC.,<br><br>Defendant. | Case No. 18-cv-03587-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND; VACATING SEPTEMBER 5, 2019 HEARING; DISMISSING ACTION WITH PREJUDICE**<br><br>[Re: ECF 75] |

Before the Court is Defendant FinishMaster, Inc.'s ("FinishMaster") motion to dismiss Plaintiff Nicolosi Distributing, Inc.'s ("Nicolosi") Second Amended Complaint ("SAC"). Mot., ECF 75. The Court finds the motion suitable for submission without oral argument and VACATES the September 5, 2019 hearing. Civ. L.R. 7-1(b). For the reasons discussed below, the motion is GRANTED WITHOUT LEAVE TO AMEND, and the action is DISMISSED WITH PREJUDICE.

## I.   BACKGROUND

Nicolosi is a small distributor of automotive paints and supplies in the San Francisco Bay Area. Second Am. Compl. ("SAC") ¶¶ 2, 17, 27–28, ECF 72. FinishMaster is a large automotive paint and supplies distributor and a direct competitor of Nicolosi. SAC ¶¶ 27–28. In its first two complaints, Nicolosi accused FinishMaster[1] of various antitrust violations resulting from FinishMaster's alleged use of exclusive dealing contracts with autobody shops (including huge up-front rebates by FinishMaster to the body-shop customers), its acquisition of smaller competitor-

---

[1] Nicolosi also sued Uni-Select, Inc, Nicolosi's parent corporation, but the Court dismissed Uni-Select for lack of personal jurisdiction. *See* ECF 71.

distributors, and its unlawful tying of products. *See generally* Compl., ECF 1; First Am. Compl. ("FAC"), ECF 50. Nicolosi also accused FinishMaster of knowing involvement in unlawful discriminatory pricing by Axalta Coating Systems, LLC ("Axalta"), a paint manufacturer who sells to both Nicolosi and FinishMaster. *See generally* Compl.; FAC. In its order granting FinishMaster's motion to dismiss the First Amended Complaint, the Court dismissed Nicolosi's antitrust and tying claims without leave to amend, in part because Nicolosi failed to plausibly allege that any of FinishMaster's actions, be it buying up smaller distributors or entering into exclusive supply agreements, had an anticompetitive effect on the market, such as reduced output or increased prices. Order re MTD FAC ("Order") at 10, ECF 71 (citing *Coal. for Icann Transparency Inc. v. Verisign, Inc.*, 464 F. Supp. 2d 948, 964 (N.D. Cal. 2006)). And the Court dismissed with leave to amend Nicolosi's claims for price discrimination under the Robinson-Patman Act ("RPA"), 15 U.S.C. § 13(f), and for secret rebates, Cal. Bus. & Prof. Code § 17045. Leave to amend these claims was granted only because the Court had not previously reviewed the claims. *See generally* Order.

In its FAC, to support its RPA claim, Nicolosi had alleged that FinishMaster knowingly induces and receives discriminatory price discounts from Axalta that are not offered to Nicolosi and other small distributors. FAC ¶¶ 202–240. First, Nicolosi alleged that Axalta gives FinishMaster a 10% discount on $10 million purchases, but this discount was never offered to Nicolosi. FAC ¶¶ 205–10. It also alleged that FinishMaster knew that Nicolosi never received this discount because FinishMaster purchased all of the distributors large enough to make a similar $10 million order, and because the discount is offered in rush circumstances and FinishMaster knows it is the "go-to entity" in such circumstances because smaller distributors cannot make such purchases so quickly. FAC ¶¶ 208–09. Second, Nicolosi alleged that Axalta helps FinishMaster provide the up-front rebates offered to the body shops. FAC ¶¶ 223–26. Nicolosi alleged it was never offered similar up-front rebate sharing, FAC ¶ 229; however, it also alleged that Axalta offers it the "toplevel of discounts in exactly the same way and level as are similarly available to FinishMaster" and that Axalta "has a corporate policy of giving all distributors the same discount packages." FAC ¶¶ 85–86; *see also* FAC ¶¶ 91–92 (alleging Axalta gave Nicolosi "special

2

discounting arrangements"). These same allegations underpinned Nicolosi's secret rebate claims. *See, e.g.*, FAC ¶¶ 245, 247 (alleging 10% discount on $10 million purchase and up-front rebate are not offered to Nicolosi on same terms). Nicolosi claimed that both the 10% discount on $10 million purchase and the up-front rebate sharing are kept secret. FAC ¶¶ 247–48. And Nicolosi alleged that it was injured by these acts because Axalta is helping Nicolosi's competitor FinishMaster and keeping it out of the market. *See, e.g.*, FAC ¶ 250–57.

In its order dismissing the RPA claim, the Court first held that Nicolosi had not plausibly alleged that Axalta discriminated in price between Nicolosi and FinishMaster, especially in light of the fact that Nicolosi's allegations were internally inconsistent because at times Nicolosi appeared to allege that it received the same discounts from Axalta as FinishMaster. Order. at 11–12. The Court noted that Nicolosi needed allegations beyond a mere volume discount to allege discriminatory pricing. *Id.* at 12. The Court also held that Nicolosi had failed to allege two completed, substantially contemporaneous sales by Axalta to FinishMaster and Nicolosi, respectively, for both the 10% discount and the up-front rebates. The FAC was devoid of any relevant facts regarding contemporaneous sales or help with rebates that Axalta made to Nicolosi. *Id.* And the Court found that Nicolosi had not shown that Axalta's help with up-front rebates was tied to sale of a tangible good to FinishMaster. Because of these deficiencies, the Court noted that Nicolosi's allegations of injury were implausible. *Id.*

The Court next held that Nicolosi had failed to allege that FinishMaster knew that Axalta was offering it discriminatory pricing, finding that these allegations were largely conclusory. *Id.* "At most," Nicolosi had alleged that "FinishMaster knew that Axalta would go to it instead of other distributors to get quick $10 million revenues and that FinishMaster has bought up everyone big enough to make a similar $10 million order. FAC ¶¶ 206, 207, 209, 226." *Id.* But these allegations were not sufficient to allow a plausible inference that Axalta was not or would not offer such discounts to others. Also, because Nicolosi had not alleged facts demonstrating that the 10% discount was anything but a volume discount, it had not alleged that FinishMaster knew that the discount was unlawful.

The Court dismissed the secret rebate claim—also premised on the 10% discount and the

3

up-front rebates—for the same reasons. Order at 13. Nicolosi had not alleged that the discount was secret because it had not alleged that Axalta did not offer the discount to others. And it had not alleged that the discount was unearned because the discount and up-front rebates may have been lawful volume discounts. Finally, Nicolosi had not alleged any contemporaneous purchase by Nicolosi for a different price. *Id.*

Nicolosi amended on the RPA and secret rebate claims. In its SAC, Nicolosi adds new allegations to bolster the claims. These claims are still premised on the two discriminatory pricing actions described above: (1) "FinishMaster receives large up-front discounts" from Axalta, *i.e.*, Axalta splits the costs of up-front rebates that FinishMaster provides to its customers; and (2) "FinishMaster receives a 10% discount if it completes $10 million in purchases." SAC ¶¶ 40–41, 102–04.

To support the 10% discount allegations, Plaintiff cites an anonymous letter (though Plaintiff's counsel believes he knows who authored the letter), which states that "Axalta is offering large discounts and rebates to national Distributors," detailing the 10% discount, which is tied to Axalta making its "monthly [revenue] number[s]." SAC ¶¶ 57, 59. Nicolosi likewise alleges that Axalta offers the 10% discount because it wants to "book[] revenues," not because the discount creates economic efficiencies or other advantages. SAC ¶ 68. As to the up-front rebates, Nicolosi alleges that Axalta provides Nicolosi's customers with up-front rebates of "much smaller amounts." SAC ¶ 45. But Nicolosi also alleges that the terms of the up-front rebates are "fiercely-guarded secret[s]," such that it is not aware of the terms of the agreements, including the ratio of the up-front rebate Axalta pays. SAC ¶¶ 41b, 53, 109–10.

Nicolosi alleges that it is constantly purchasing paint from Axalta, including concurrently with the discounted purchases FinishMaster makes. SAC ¶¶ 69, 70. Axalta has never offered these discounts to Nicolosi, but Nicolosi could have accepted such an offer through installment purchases. SAC ¶¶ 42–45, 60–61, 66, 72, 87. At the same time, FinishMaster allegedly exploits its market power to obtain special deals from Axalta that no other distributors receive. SAC ¶¶ 12, 49. It does not receive these discounts because of enhanced intrabrand competition because allegedly FinishMaster does not provide reliable services. SAC ¶¶ 55–56. And FinishMaster

receives the 10% discount when Axalta's monthly billing reports are due, even though FinishMaster regularly purchases $10 million in paint.  SAC ¶ 105.

As to harm to competition, FinishMaster allegedly uses the up-front payments to obtain exclusive dealing contracts with body shops and to tie up non-paint products.  SAC ¶¶ 50–51, 80, 113.  Nicolosi provides an example of an exclusive dealing contract between FinishMaster and Caliber Collisions, a large auto-body chain in the Bay Area.  SAC ¶ 67.  Nicolosi alleges it has suffered millions of dollars in damages from these allegedly anti-competitive practices.  SAC ¶¶ 89–94.

Finally, Nicolosi alleges in several ways that FinishMaster knows it is receiving discriminatory discounts from Axalta.  First, it alleges that FinishMaster induces the up-front sharing from Axalta.  SAC ¶¶ 42–45, 48, 109.  Second, FinishMaster allegedly knows that Axalta's up-front rebate sharing is discriminatory because it knows that other companies are not offering up-front monies to auto-body shops at the same levels as FinishMaster.  SAC ¶ 73.  Third, FinishMaster knows that it has purchased the only two companies who were receiving the same deals from Axalta.  SAC ¶¶ 62–63, 74–75.  Fourth, FinishMaster knows of Axalta's discrimination based on the timing of the 10% discount sales, which occur just before Axalta's reporting cycles at a time only FinishMaster could fill the orders.  SAC ¶¶ 76, 78.  Finally, FinishMaster's knowledge of the industry allegedly gives it insight into the fact that Nicolosi and other similar distributors do not receive these deals.  SAC ¶¶ 63–64.

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or

unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

If the Court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. DISCUSSION

FinishMaster moves to dismiss both claims. The Court discusses each claim in turn.

#### A. Claim 5: Price Discrimination, Robinson-Patman Act, 15 U.S.C. § 13(f)

The RPA "prohibits sellers from discriminating on price in the sale of like goods, and thereby reducing competition, unless the price differential can be justified by savings to the seller." *Gorlick Distribution Centers, LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1021 (9th Cir. 2013). The RPA contains a counterpart provision that makes it unlawful for buyers "knowingly to induce or receive a discrimination in price which is prohibited by this section." *Id.* (quoting 15 U.S.C § 13(f)). A buyer can only be liable under the RPA where "the seller is in violation of the Act as well." *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1283 (9th Cir. 1983); *accord Great Atl. & Pac. Tea Co. v. F.T.C.*, 440 U.S. 69, 77 (1979) ("[B]uyer liability under § 2(f) is dependent on seller liability under § 2(a)."). Thus,

Nicolosi must allege a violation of the RPA by Axalta under Section 2(a) by pleading the following four elements: "(1) the relevant sales were made in interstate commerce; (2) the products sold were of the same grade and quality; (3) that [the seller] discriminated in price as between [the plaintiff] and another purchaser; and (4) the discrimination had a prohibited effect on competition." *High Tek USA, Inc. v. Heat & Control, Inc.*, No. 12-CV-00805 YGR, 2012 WL 2979051, at *4 (N.D. Cal. July 18, 2012) (citing *Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 556 (1990)). "A key requirement for a Robinson-Patman section 2(a) claim is a showing that there have been at least two completed, substantially contemporaneous sales by the same seller." *Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1191 (9th Cir. 1984); *see also Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1036 (N.D. Cal. 2001). Moreover, to be liable for the seller's price discrimination, the buyer (FinishMaster) must know "both that (1) [it] was receiving a lower price than a competitor and (2) the seller would have 'little likelihood of a defense' for offering that price." *Gorlick*, 723 F.3d at 1022.

FinishMaster argues that Nicolosi fails to satisfy many of these elements, including that there were two contemporaneous sales of commodities at different prices, that any differential price had no lawful purpose, that FinishMaster had knowledge of any discrimination, and that any discrimination harmed competition. *See generally* Mot. at 1–2. The Court agrees as to each element.

First, Nicolosi fails to plausibly allege two contemporaneous sales by Axalta of commodities at different prices to Nicolosi and FinishMaster. As to the 10% discount, Nicolosi does not include any allegations whatsoever about a single sale between Axalta and Nicolosi. Instead, Nicolosi alleges only that it continuously purchases paint from Axalta and that it did not receive the 10% discount on those sales. SAC ¶¶ 69–70, 87. It does not allege that any of those purchases were of $10 million worth of goods (thus qualifying for the discount), and indeed it alleges that it *could* have (not did) purchased $10 million worth of products if the discount had been offered. SAC ¶ 66. Without details of any specific purchase by Nicolosi, the Court cannot compare the prices/terms Axalta offered to FinishMaster with prices/terms it offered to Nicolosi. Without more, it is equally plausible that Nicolosi did not receive the 10% discount because it

never attempted to purchase the necessary amount of goods. Though Nicolosi alleges the dates on which FinishMaster was offered the discounts (just before Axalta's reporting deadlines), SAC ¶¶ 69–71, it does not allege that it was denied that same discount based on the same terms around the same time. Moreover, Nicolosi's vague and general allegations about its own deals with Axalta are perplexing considering that Nicolosi knows the terms of those deals and the Court previously instructed Nicolosi to include those allegations. The anonymous letter does not help Nicolosi on this front, both because it cannot constitute factual allegations under Federal Rule of Civil Procedure 11(b) and because it does not provide any details about discounts on specific sales to FinishMaster as compared to Nicolosi. *See* SAC, Ex. B.

Nicolosi's allegations with respect to the up-front rebates fail for the same reasons. While Nicolosi points to a specific deal between Axalta and FinishMaster and a FinishMaster customer, SAC ¶¶ 52–54, it does not point to a contemporaneous deal between Nicolosi and Axalta and a Nicolosi customer with similar provisions in which Axalta offered to pay a different amount. Nicolosi simply alleges that Axalta pays Nicolosi's customers "much smaller amounts," without any attendant allegation that the deals were of the same size or otherwise comparable with an Axalta-FinishMaster deal. SAC ¶¶ 42, 44–45.

The up-front rebate theory also fails on this element for the additional reason that Nicolosi still fails to allege that the up-front rebate sharing relates to the sale of goods to FinishMaster, considering Nicolosi does not allege that the rebate sharing is related to FinishMaster's purchase of paint from Axalta.[2] *See May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1214 (9th Cir. 1980); *Windsor Auctions, Inc. v. eBay, Inc.*, No. C-07-06454 RMW, 2008 WL 2622791, at *2 (N.D. Cal. July 1, 2008). For these reasons, Nicolosi has not alleged a discrimination in pricing in two contemporaneous sales by the same seller.

Second, even if Nicolosi had alleged discounts were offered differently to FinishMaster and Nicolosi, Nicolosi fails to plausibly allege that either the 10% discount or the up-front rebate sharing is discriminatory for unlawful reasons. As to the 10% discount, Nicolosi has not alleged

---

[2] Even if the rebate sharing might be considered a "service" under 15 U.S.C. §§ 13(d) or 13(e) (a theory which Nicolosi does not plead), other deficiencies in the complaint compel dismissal.

sufficient facts from which the Court can infer that the 10% discount is anything more than a lawful volume discount. Indeed, Nicolosi alleges in several places that FinishMaster was offered these deals because of its size and ability to make large purchases, implying that Nicolosi could not similarly have taken advantage of the deals, despite Nicolosi's allegation stating that it could have. *See* SAC ¶¶ 12, 49, 76. Though Nicolosi alleges that the discounts were offered so Axalta could book revenues and not for the purpose of economic efficiency, SAC ¶ 68, and supports this conclusion with facts concerning the timing of the offered discounts around Axalta's reporting deadlines, these same facts could plausibly lead Axalta to provide the discount to Nicolosi. Indeed, Nicolosi does not allege that the purpose of Axalta's "rush" offers was to limit competition, as opposed to raise additional revenues for its own bottom line. As alleged, it is differences between Nicolosi's and FinishMaster's business characteristics (namely, their ability to purchase enough product) that leads to the allegedly discriminatory pricing. Put another way, in the circumstances alleged, the sales to FinishMaster appear to be based on the fact that FinishMaster can purchase the required volume—*i.e.*, a volume discount. See *Gorlick Distribution Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1022 (9th Cir. 2013) (recognizing that differences in prices may be justified by "significant differences in how the two [purchasing] companies did business").

As to the up-front rebates, again Nicolosi does not allege sufficient details from which the Court could conclude that it is more plausible that the up-front rebate sharing does not have a lawful basis, such as alleging similarities in the size of the body shop customers to whom Axalta is offering the discounts. Though it alleges that the up-front rebates do not enhance intrabrand competition, SAC ¶¶ 54–55, there are other lawful reasons why Axalta might offer such a discount that Nicolosi's allegations do not plausibly discredit. Moreover, Nicolosi alleges that the rebate goes to FinishMaster's customers, not to FinishMaster; thus, any "discount" goes to the body shop, not to FinishMaster. If there is any price discrimination, it is between body shop customers. Furthermore, unlike with the 10% discount, Nicolosi alleges that the up-front rebate sharing occurs throughout the year, SAC ¶ 79, such that Nicolosi cannot even hang its hat on the "reporting revenue" theory of why any alleged discrimination in rebate-sharing does not have a

9

lawful function.

Third, even if Nicolosi successfully alleges that the discounts are discriminatory and unlawful, it has not plausibly alleged the FinishMaster knew of Axalta's discrimination. As in its order dismissing the First Amended Complaint, the Court finds that "[w]ithout more facts about the price discrimination itself, and how FinishMaster would have known it was anything other than a lawful volume discount, the Court cannot plausibly infer that FinishMaster knowingly received or induced any alleged discriminatory prices. *Cf.* Gorlick, 723 F.3d at 1021." Order at 13. Nicolosi is correct that it includes facts plausibly alleging that FinishMaster knew it was the only company receiving the discounts, because it purchased the only two companies receiving the same discounts, SAC ¶¶ 62–63, 74–75; it received the 10% discount at the times of Axalta's reporting cycles, SAC ¶¶ 76, 78; and it has expert knowledge of the industry from which it knows that Nicolosi and others do not received these discounts, SAC ¶¶ 63–64. However, none of these facts allows for the plausible inference that FinishMaster knew that any discount to FinishMaster was unlawful, because FinishMaster had no way of knowing that the unique discounts were not based on its own unique business characteristics, such as its size. Moreover, the timing of the offered 10% discounts (at the time of the reporting cycle) could plausibly indicate to FinishMaster that Axalta would be seeking to book revenues from myriad sources, such that FinishMaster would not know it was the only one to whom such discounts were offered. And to the extent Nicolosi alleges that it could have qualified for the discount through installment purchases, FinishMaster had no reason to know that other distributors were not being offered the 10% discount based on the same installment plan.

Finally, Nicolosi has not alleged that any discrimination in pricing between FinishMaster and Nicolosi harmed competition. Nicolosi points only to its allegations that the allegedly discriminatory discounts allowed FinishMaster to secure exclusive supply agreements with body shops. *See* Opp. at 13 (quoting SAC ¶¶ 80–82). In its previous motion to dismiss orders, this Court already determined that Nicolosi has failed to allege that FinishMaster's exclusive supply agreements harm competition. *See* Order at 10. Nicolosi does not add facts to cure this previously-identified deficiency. Moreover, Nicolosi does not allege a connection between

Axalta's alleged discriminatory 10% discount and FinishMaster's exclusive supply agreements. *See* SAC ¶¶ 80–82.

Thus, Nicolosi fails to plead sufficient facts to satisfy several elements of an RPA claim. Because the Court provided Nicolosi specific instruction on how to amend these deficiencies, and Nicolosi was not able to do so, the Court concludes that further amendment would be futile. As such, the RPA claim is DISMISSED WITHOUT LEAVE TO AMEND.

### B. Claim 6: Secret Rebates, Cal. Bus. & Prof. Code § 17045

Section 17045 states that "[t]he secret payment or allowance of rebates, refunds, commissions, or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor and where such payment or allowance tends to destroy competition, is unlawful." A claim under Section 17045 has three elements: "(1) there must be a secret allowance of an unearned discount; (2) there must be injury to a competitor; and (3) the allowance must tend to destroy competition." *PHL Variable Ins. Co. v. Crescent Fin. & Ins. Agency, Inc.*, No. 16-CV-01307-CAS, 2018 WL 1577709, at *5 (C.D. Cal. Mar. 26, 2018) (citations and internal quotation marks omitted).

FinishMaster argues that Nicolosi fails to allege that the discounts were secret or unearned, that Nicolosi was harmed, or that FinishMaster knew of any alleged price discrimination. *See generally* Mot. at 1–2. The Court agrees as to the first two elements, and thus does not discuss the third.

Starting with the second element of harm to competition, the Court has already held that Nicolosi's complaint fails to allege harm to competition through the allegedly discriminatory discounts. Moreover, Nicolosi fails to satisfy this element because it has not alleged any details with respect to any customers or revenues that Nicolosi allegedly lost based on Axalta's alleged discriminatory discounts. Nicolosi does not identify a single customer it lost because of these discounts that it otherwise may have captured. Indeed, as discussed above, given that Nicolosi may not be large enough to take advantage of these discounts, Nicolosi has not successfully alleged that it could satisfy the same customer needs that FinishMaster can, meaning it has not

11

1  alleged that these customers would turn to it rather than FinishMaster even absent the discounts.

2  As to the discounts being secret allowances of unearned discounts, as discussed above, Nicolosi has not successfully alleged that there is no legal basis for these discounts, such as a volume discount. Though Nicolosi alleges that FinishMaster "does not do anything other than buy paint as it usually does" and does not provide "any special technical services or other economic benefits," SAC ¶¶ 105, 111, these conclusory allegations alone are not sufficient to rebut the other allegations that plausibly suggest that Axalta provides these discounts as part of a lawful volume discount such that the discounts are "earned." Indeed, FinishMaster's ability to "provid[e] its own portion of the up-front monies paid to A-list auto body shops," SAC ¶ 111, and Axalta's 10% discount based on FinishMaster's "huge size," SAC ¶ 49, indicate that FinishMaster's business characteristics are the justification for the discounts.

Finally, the Court notes that because Nicolosi has not provided sufficient details of its own purchases from Axalta, the Court cannot conclude that Nicolosi was "purchasing *upon like terms and conditions*" such that Axalta's sales to FinishMaster can even be compared to Nicolosi's purchases. Cal. Bus. & Prof. Code § 17045.

Thus, for many of the same reasons that its RPA claim fails, Nicolosi's secret rebate claim fails. Again, the Court specifically directed Nicolosi how to fix these deficiencies, such that further leave to amend would be futile. The claim is DISMISSED WITHOUT LEAVE TO AMEND.

## IV. ORDER

For the foregoing reasons, FinishMaster's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND, and the case is DISMISSED WITH PREJUDICE. Pursuant to the Court's previous orders dismissing Nicolosi's claims, the present order dismissing Nicolosi's final claims, and the judgment filed concurrently with this order, the Clerk of the Court is directed to close the case.

///

///

///

**IT IS SO ORDERED.**

Dated: August 26, 2019

_____
BETH LABSON FREEMAN
United States District Judge